United States District Court
Southern District of Texas
**ENTERED**
July 10, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
|     Plaintiff/Respondent, § | | |
| § | | |
| V. § | | CR. No. 2:15-574-1 |
| § | | (CA. No. 2:16-434) |
| JOHN LEE KING, § | | |
|     Defendant/Movant. § | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant/Movant John Lee King's (King) motion vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 49), to which the government responded (D.E. 64).

**I.    BACKGROUND**

On June 3, 2015, King was stopped at the Border Patrol Checkpoint near Falfurrias, Texas, for an immigration inspection. Border Patrol agents opened the trunk of King's rental vehicle in the secondary inspection lane and found two men. Both men admitted they crossed into the United States without permission, but also stated that they never saw the person operating the vehicle. King was released.

Nine days later, on June 12, 2015, King was stopped for an immigration inspection at the Border Patrol Checkpoint near Sarita, Texas. He was driving a red Volkswagen Beetle. His passenger, Sergio Martinez-Hernandez, told the agents that he was a United States citizen, but he did not have identification. Martinez-Hernandez was visibly nervous. After King and Martinez-Hernandez were referred to the secondary inspection lane, Martinez-Hernandez admitted that he was a citizen of Mexico and was present in the United States without permission. King denied

1

that he knew Martinez-Hernandez was an alien. Both King and Martinez-Hernandez were arrested.

A jury convicted King in 2015 on one count of conspiracy to transport undocumented aliens and one count of transportation of an undocumented alien.[1] The Government presented evidence related to both June 2015 immigration stops during trial. After trial, the Court ordered the Probation Department to prepare a Presentence Investigation Report (PSR).

King's offense level was calculated at 18, based upon conspiracy and transportation of two aliens in the trunk of a car, which created a substantial risk of death or serious bodily injury to them. King had previous criminal convictions, several of which were misdemeanors dating back to his early twenties. His felony convictions included four convictions for possession of drug paraphernalia and promoting a detrimental drug. His criminal history category was III, yielding a guideline sentencing range of 41 to 51 months' imprisonment.

At sentencing, the Court reviewed the guideline calculation with King and noted there were no objections. Defense counsel requested a low-end guideline sentence. The Government argued for a mid-range guideline sentence. The Court imposed a sentence of 42 months' imprisonment for each count to run concurrently. Judgment was entered on March 23, 2016. King did not appeal.

King first filed a *pro se* letter to the Court requesting reconsideration of his sentence in August 2016. D.E. 47. The Court construed that letter as a § 2255 filing and advised King of the consequences. King then filed the present motion. It is timely.

---

[1] King was charged with violating 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(v)(II), 1324(a)(1)(B)(i) and 1324(a)(1)(B)(ii).

## II. MOVANT'S CLAIMS

King's first claim is that he is innocent of the counts of conviction. He argues that he did not know there were undocumented aliens in the trunk of the rental car he was operating on June 3, 2015. He claims he did not appeal because defense counsel "told me not to appeal. He told me I got a good deal." D.E. 49, p. 4. King also claims that counsel told him: "I could not appeal." *Id*. In his second ground, King challenges the use of an interpreter during the alien's testimony. He argues that if the alien had testified in English that he lived in the United States from 1998 until 2006 and again until 2013, King's denial that he knew that his passenger was undocumented would have been more credible.

The United States argues that King's claims are without merit.

## III. ANALYSIS

### A. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

### B. Ineffective Assistance of Counsel

#### 1. *Standard*

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under *Strickland*, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. *Glover v. United States,* 531 U.S. 198, 203 (2001); *United States v. Herrera*, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

#### 2. *Failure to appeal*

King's motion states both that defense counsel told him he could not appeal and that he should not appeal. Defense counsel filed an affidavit in which he swore he told King that he did not have grounds for appeal, but "I did not tell him he could not [appeal]." D.E. 63. Because of

the contradiction between King's claim and defense counsel's affidavit, the Court held an evidentiary hearing on June 27, 2017.

If a defendant requests that counsel file a notice of appeal, counsel's failure to do so constitutes ineffective assistance even without a showing that the appeal would be meritorious. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477, 486 (2000); *cf. United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). "At the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Roe*, 528 U.S. at 477. "When a defendant has not instructed counsel whether to file a notice of appeal, the inquiry becomes whether counsel's failure to consult with a defendant regarding an appeal constituted deficient performance." *Id*. at 478.

At the conclusion of sentencing, the Court advised King of his right to appeal. King responded that he understood.[2]

King testified at the evidentiary hearing that he spoke to counsel briefly after the sentencing hearing. According to King, defense counsel told him there was no need to appeal, and that King got a good deal. King thought that meant he should not appeal. He did not understand that he could appeal anyway. Counsel came to see King at the detention center. King

---

[2] I advise you that you have the right to appeal your conviction and sentence; and if you're unable to hire a lawyer, the Court will appoint one for you.
Do you understand that you have that right?
THE DEFENDANT: Yes, sir, I do. Thank you, sir. . . .
THE COURT: All right.
Have you discussed appeal with Mr. Schiwetz?
THE DEFENDANT: I have not, sir.
THE COURT: Okay. Well, be sure you do before he leaves today.
THE DEFENDANT: Thank you, sir.
THE COURT: You don't have to, but I don't want to hear later that it wasn't discussed.
THE DEFENDANT: I understand, sir.

D.E. 55, pp. 6-7.

did not recall discussing the appeal with counsel and did not know why counsel came to see him. King said that he was in shock after sentencing. He did not think he was guilty and was shocked to be sentenced to 42 months in prison.

King sent a letter response to the Government in these proceedings. In his response, King stated: "My court appointed attorney told me that I had no grounds for an appeal." D.E. 70-1, p. 1. King also stated: "My attorney did in fact tell me that I had no grounds for an appeal and because of my ignorance of the law, I went with his recommendation." *Id.*, p. 3.

Defense counsel testified at the hearing. Immediately after sentencing, King expressed a desire to appeal. Counsel told him that he would come and speak with him about the appeal later. Within approximately 10 days, counsel visited King at the detention center. According to counsel, he reviewed the pros and cons of an appeal with King. Counsel advised King that counsel did not see grounds for a successful appeal and King's sentence was "a good deal." King told counsel there was an issue from the guilt portion of the trial that he wanted to appeal. Counsel and King discussed the issue, and at the end of that conversation, King agreed with counsel and no longer wished to appeal. Counsel testified that he absolutely did not tell King he could not appeal.

Counsel has been a practicing attorney for 40 years. For the first six to seven years, he was a state prosecutor. He spent the next 30 years primarily doing civil insurance defense work. For the past six to seven years he has represented criminal defendants in state and federal court. His practice is roughly half federal criminal defense. He routinely meets with criminal defense clients and discusses their appellate rights. He usually give his clients the timetables for appeal, possible grounds for appeal, the practical results of a potential appeal, and his opinion whether an appeal is likely to be successful. Government Exhibit 1 is a portion of counsel's billing

6

records for multiple clients on March 31, 2016. Regarding King, the entry reads: "travel to Detention Center to discuss appeal w/client: He changes his mind + decides not to appeal. -50 miles-" D.E. 69-1.

King's counsel for the hearing argued that King did not fully understand his appellate rights and believed that he could not appeal. The AUSA argued that King is an intelligent man who has 20 plus years' experience in the criminal justice system and understood the difference between should not appeal and could not appeal. The AUSA further argued that the evidence clearly demonstrated that defense counsel consulted with King regarding appeal.

After considering the evidence, including counsel's testimony and contemporaneous written records, which are supported in part by King's testimony, the Court finds that King has not met his burden to establish that counsel told King that he could not appeal.[3] As a result, King's claim of ineffective assistance of counsel is denied.

### 3. *Failure to elicit testimony from Martinez-Hernandez*

King also complains that Martinez-Hernandez testified through an interpreter and that Martinez-Hernandez' lengthy stay in the United States from 1998 to 2013 was not explored at trial. The Court construes this as a complaint that counsel should have addressed these issues with Martinez-Hernandez, and his failure to do so constituted ineffective assistance. According to King, his testimony that he did not know Martinez-Hernandez was an alien would have been more believable if the jury knew that Martinez-Hernandez spoke English and had lived in the United States for many years. Other evidence at trial casts significant doubt on whether the evidence that counsel allegedly failed to elicit would have made any difference.

---

[3] "In a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden of proof." *See Clark v. Collins*, 19 F.3d 959, 964 (5th Cir. 1994).

The Government's evidence included King's text messages. On May 14, 2015, there is a message: "I am in the valley, got a job for a day and a night." D.E. 29-11. The messages that day also stated: "I will be paid 25 hundred dollars for this driving job and if it goes well, I will do it twice a week for a total of five thousand US dollars a week." *Id*. On May 30, 2015, as part of a series of messages, King said: "no, I am still doing the Lord's work my dear . . . HE has blessed me at every turn for I made over $6000.00 USD the last week in cash by transporting HIS Christians to safety." *Id*.

Considering Martinez-Hernandez' testimony that King coached him on his responses to Border Patrol agents, King's numerous motel bills, the use of different cars, and the text messages, evidence that Martinez-Hernandez spoke English and lived in the United States for many years would have been unlikely to affect the result. King cannot demonstrate prejudice from counsel's failure to elicit additional evidence from Martinez-Hernandez.

## IV. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although King has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A Certificate of Appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483-84). As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

The Court finds that King cannot establish at least one of the *Slack* criteria. Accordingly, he is not entitled to a Certificate of Appealability as to his claims.

## V. CONCLUSION

For the foregoing reasons John Lee King's motion to vacate, set aside, or correct sentence (D.E. 47, 49) is **DENIED** and this action is **DISMISSED** with prejudice. Additionally, King is **DENIED** a Certificate of Appealability.

It is so **ORDERED** this 10th day of July, 2017.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE